**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-23752-BLOOM/Otazo-Reyes**

AHMER ALTAF SHAIKH,

       Petitioner,

v.

MICHAEL W. MEADE, in his official
capacity as Field Office Director, Miami
Field Office, U.S. Immigration and Customs
Enforcement,

TAE D. JOHNSON, Acting Director,
United States Immigration and Customs
Enforcement, and

ALEJANDRO MAYORKAS, Secretary of
the United States Department of Homeland
Security,

       Respondents.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Petitioner Ahmer Altaf Shaikh's ("Shaikh" or "Petitioner") Verified Petition for Writ of Habeas Corpus (hereafter, "Petition") [D.E. 1]. Respondents Michael W. Meade, Tae D. Johnson, and Alejandro Mayorkas ("Respondents") filed a Response in Opposition to the Petition (hereafter, "Opposition") [D.E. 12]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 13]. The undersigned held a Zoom evidentiary hearing on this matter on December 16, 2021 (hereafter, "Evidentiary Hearing") [D.E. 20]. After full consideration of the parties' written submissions and of the evidence and argument presented at the Evidentiary

Hearing, the undersigned respectfully recommends that Shaikh's Petition be GRANTED IN PART, and that he be afforded a bond hearing before an Immigration Law Judge.

### PROCEDURAL AND FACTUAL BACKGROUND

Shaikh, a native of Pakistan, filed his Petition on October 24, 2021, seeking release from detention at Krome North Processing Center ("Krome").  Shaikh was taken into immigration custody on July 9, 2020, after completing a twenty-year sentence for second degree murder in Virginia.  Shaikh had come to the United States at age seventeen and was a permanent resident but never became a U.S. citizen.  On March 31, 2021, he was ordered removed to Pakistan based on his criminal conviction.

Shaikh argues that he is entitled to release from immigration custody because there is no significant likelihood that he will be removed to Pakistan in the foreseeable future.  Alternatively, Shaikh seeks a bond hearing on due process grounds.  Shaikh asserts the following two claims in his Petition:

Count One:    Violation of the Immigration and Nationality Act, 8 U.S.C. § 1231.

Count Two:    Violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

See Petition [D.E. 1 at 18-21].

### APPLICABLE LAW

Title 8, United States Code, Section 1231 provides, in pertinent part:

(a) Detention, release, and removal of aliens ordered removed

(1) Removal period

(A) In general

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

2

(B) Beginning of period

The removal period begins on the latest of the following:

(i)     The date the order of removal becomes administratively final.

(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

(C) Suspension of period

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

(2) Detention

During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

(3) Supervision after 90-day period

If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien--

(A) to appear before an immigration officer periodically for identification;

(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate;

(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

***

(6) Inadmissible or criminal aliens

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a) (hereafter, "Section 1231(a)").

In Zadvydas v. Davis, 533 U.S. 678 (2001), the United States Supreme Court initially noted that, "When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody." Id. at 682.  The Court then acknowledged that, pursuant to 8 U.S.C. § 1231(a)(6), such aliens may be detained beyond the 90-day removal period.  Id.  Thus, in Zadvydas, the Court had to "decide whether this post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal."  Id.

After determining that a six-month post-removal detention period is presumptively reasonable, the Court ruled as follows:

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

4

**FACTS**

Shaikh's case manager, Deportation Officer Paul Fernandez ("Officer Fernandez") testified at the Evidentiary Hearing.  <u>See</u> Exhibit & Witness List [D.E. 21].   Additionally, Respondents' Exhibits A-E were admitted.  <u>Id.</u>  Following is a summary of Officer Fernandez's relevant testimony, which the undersigned found to be credible and reliable.

1.      Officer Fernandez was assigned as Shaikh's case officer in June 2021.  He provided the following timeline of events:

- March 31, 2021 - Shaikh's final order of removal issued.

- April 21, 2021 – Request made to Pakistan for issuance of travel documents to effectuate Shaikh's removal.

- May 3, 2021 – Shaikh's fingerprints requested by Pakistani Consulate General.

- July 31, 2021 – Shaikh interviewed by Pakistani consular officer.

- August 26, 2021 – Shaikh's travel documents issued.

- September 22, 2021 – Shaikh scheduled to travel to Islamabad, Pakistan on a charter flight, but removed from the plane due to lack of additional required documents.

- December 15, 2021 – Request for new set of travel documents mailed to Consulate General of Pakistan in Houston, Texas by second-day air mail (Resp. Ex. E).

2.      Officer Fernandez explained that the missing additional required documents that caused Shaikh's removal from the charter flight to Islamabad consisted of a an "FIA" letter and a manila envelope, over which Officer Fernandez did not have physical control at the time of the flight's scheduled departure.  Without those documents, Shaikh would not have been admitted to Pakistan upon his arrival in Islamabad.

3.      Officer Fernandez further testified that, once Shaikh was removed from the Islamabad charter flight, he undertook an investigation of certain inconsistencies in Shaikh's travel

documents relating to his name, date of birth and parents' names that had been brought to his attention by Shaik's counsel.

4.      To ensure the accuracy of a new travel documents request, Officer Fernandez reviewed with Shaikh and his counsel every item in Shaikh's Form I-217, Information for Travel Document or Passport.  See Resp.'s Ex. E [D.E. 19-1 at 8-9].

5.      There was a delay in mailing the request for new travel documents Consulate General of Pakistan because Pakistan required that it be accompanied by a money order, which could not be initially obtained due to a lapse in federal funding.

6.      With regard to Shaikh's continued post-removal detention, on September 27, 2021, a panel from U.S. Immigration and Customs Enforcement ("ICE") conducted a review and determined that he was not to be released from custody.  See Resp. Ex. D [D.E. 12-4 at 5].

7.      With regard to repatriations from the United States to Pakistan, Officer Fernandez testified that there are approximately 200 cases per year and that the year 2020 was on track for that number.

## DISCUSSION

1.  *Shaikh is not entitled to release from custody pending removal.*

Pursuant to Section 1231(a), Shaikh's post-removal detention period commenced on the date his removal order was issued, namely, March 31, 2021.  See 8 U.S.C. § 1231(a)(1)(B)(i). Therefore, at the time of the Evidentiary Hearing, Shaikh had been in post-removal detention for close to nine months, which is past the six-month period presumed reasonable in Zadvydas, 533 U.S. at 701.  Thus, Shaikh must meet the burden of providing "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future, [and] the Government must respond with evidence sufficient to rebut that showing."  Id.

At the Evidentiary Hearing, Shaik argued that, based on the experience with the first set of travel documents, and given that the new request had just been mailed to the Consulate General of Pakistan, it would be at least five months before Shaikh is potentially removed to Pakistan.[1] According to Shaikh, adding five months to the already elapsed nine-month post-removal detention period results in a shrinkage of what counts as the "reasonably foreseeable future," per Zadvydas, 533 U.S. at 701 ("And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."). However, even when viewed through this shrinking prism, a five-month time frame constitutes a "reasonably foreseeable future" for Shaikh's removal at this juncture, especially given that Pakistan previously issued travel documents for Shaikh and that, according to Officer Fernandez's credible testimony, Pakistan accepts approximately 200 repatriation cases from the United States per year.

In the alternative to immediate release, Shaikh requested at the Evidentiary Hearing the issuance of an order directing that he be released if he is not removed in five months. However, nothing in Zadvydas supports the issuance of such an anticipatory order. Should Shaikh be able to adduce at a later juncture "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Zadvydas, 533 U.S. at 701, he may seek release at that time.

2. ***Shaikh is entitled a bond hearing.***

In requesting a bond hearing based on due process grounds, Shaikh argues that ICE's "*pro forma* internal custody reviews" fail to "meet the minimum procedural safeguards required by due process." Petition [D.E. 1 at 20] (citing Diouf v. Napolitano, 634 F.3d 1081 (9th Cir. 2011). In

---

[1] As shown in the timeline above, the first request for travel documents to Pakistan was made on April 21, 2021 and Shaikh's attempted removal to Islamabad occurred on September 22, 2021.

<u>Diouf</u>, the Ninth Circuit concluded that the Department of Homeland Security's ("DHS") regulations governing the 180-day review of post removal detention "raise serious constitutional concerns."  <u>Id.</u> at 1092.  Thus, the Ninth Circuit held that "an alien facing [such] prolonged detention under § 1231(a)(6) is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community."  <u>Id.</u>  Shaikh underwent such a 180-day review hearing on September 27, 2021, which resulted in a determination that he was not to be released from custody. <u>See</u> Resp. Ex. D [D.E. 12-4 at 5].  Therefore, pursuant to <u>Diouf</u>, Shaikh is entitled to a bond hearing before an Immigration Law Judge.

At the Evidentiary Hearing, the government argued that, in <u>Johnson v. Guzman Chavez</u>, 141 S. Ct. 2271 (2021), the United States Supreme Court already foreclosed the availability of a bond hearing for aliens detained under Section 1231(a).  However, in <u>Guzman Chavez</u>, the Supreme Court merely stated, without analysis, that if Section 1321(a) applies to an alien, then "the alien is not entitled to a bond hearing."  <u>Id.</u> at 2280.  The government further noted at the Evidentiary Hearing that the issue decided in <u>Diouf</u> is presently before the Supreme Court on a grant of certiorari in <u>Johnson v. Arteaga-Martinez</u>, 2021 WL 3711641 (Aug. 23, 2021).  While the government contends that <u>Guzman Chavez</u> foretells the result in <u>Arteaga-Martinez</u> in a way contrary to the Ninth Circuit's holding in <u>Diouf</u>, the undersigned does not presume to have a similar crystal ball.  Therefore, pursuant to <u>Diouf</u>, the undersigned respectfully recommends that Shaikh's Petition be granted in part and that he be afforded a bond hearing before an Immigration Law Judge.

**RECOMMENDATION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Shaikh's Petition [D.E. 1] be GRANTED IN PART only to the extent that, due to his prolonged post-removal detention, he should be afforded a bond hearing before an Immigration Law Judge; and that the Petition be otherwise DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge.  Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 4th day of January, 2022.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:    United States District Judge Beth Bloom
       Counsel of Record