UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-23752-BLOOM/Otazo-Reyes

AHMER ALTAF SHAIKH,

    Petitioner,

v.

MICHAEL W. MEADE,
TAE D. JOHNSON, and
ALEJANDRO MAYORKAS,

    Respondents.
_____/

## ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Petitioner Ahmer Altaf Shaikh's ("Petitioner") Verified Petition for Writ of Habeas Corpus, ECF No. [1] ("Petition"). Respondents Michael W. Meade, in his official capacity as Field Office Director, Miami Field Office, U.S. Immigration and Customs Enforcement; Tae D. Johnson, Acting Director, United States Immigration and Customs Enforcement; and Alejandro Mayorkas, Secretary of the United States Department of Homeland Security (collectively, "Respondents") filed a Response in Opposition, ECF No. [12] ("Response").

The Court referred the case to Magistrate Judge Alicia Otazo-Reyes for a Report and Recommendation. ECF No. [13]. Magistrate Judge Otazo-Reyes issued a Report and Recommendation ("R&R"), recommending that the Petition be granted in part and denied in part. *See* ECF No. [22]. Petitioner timely filed his Objection, ECF No. [25] ("Petitioner's Objection"), arguing that the Petition should be granted, and Respondents filed a Response to Petitioner's Objection, ECF No. [28]. Respondents also timely filed their Objections, ECF No. [26]

Case No. 21-cv-23752-BLOOM/Otazo-Reyes

("Respondents' Objections"), arguing that the Petition should be denied, and Petitioner filed a Response to Respondents' Objections, ECF No. [27].

The Court has conducted a *de novo* review of the R&R and the record in this case in accordance with 28 U.S.C. § 636(b)(1)(C). *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)). For the reasons set forth below, the Court adopts the R&R in part consistent with this Order.

I. **BACKGROUND**

On October 24, 2021, Petitioner filed his Petition, seeking release from immigration detention. *See* ECF No. [1]. According to the Petition, Petitioner was taken into immigration custody on July 9, 2020, after completing a sentence of twenty (20) years for second-degree murder. *See id.* ¶ 17. On March 31, 2021, the Board of Immigration Appeals upheld the Immigration Judge's decision to deny Petitioner's application for relief, making his removal order to Pakistan final pursuant to 8 U.S.C. § 1231. *See id.* ¶¶ 17, 23. Petitioner does not dispute that after the removal order became final, Respondents' Deportation Officer Paul Fernandez ("Officer Fernandez") requested that the Pakistan Consulate issue travel documents for Petitioner's removal on April 21, 2021. *See* ECF No. [22] at 5. Shortly thereafter, the Pakistan Consulate requested Petitioner's fingerprints and a Pakistani consular officer interviewed Petitioner. *See id.* On August 26, 2021, less than five (5) months after Officer Fernandez's request for travel documents, the Pakistan Consulate issued Petitioner's travel documents. *See id.* On September 22, 2021, Petitioner was scheduled to travel to Islamabad, Pakistan, but was removed from the plane due to a lack of additional required travel documents. *See id.* On December 15, 2021, Officer Fernandez submitted a request to the Pakistan Consulate for a new set of travel documents. *See id.*[1]

---

[1] To the Court's knowledge, as of the date of this Order, the Pakistan Consulate has not yet issued a new set of travel documents.

2

Case No. 21-cv-23752-BLOOM/Otazo-Reyes

In the Petition, Petitioner argues that he is entitled to release from immigration custody because there is no significant likelihood that he will be removed to Pakistan in the reasonably foreseeable future. *See* ECF No. [1] ¶ 104. Alternatively, Petitioner seeks a bond hearing on Due Process grounds. *See id.* ¶ 113. Respondents oppose the relief Petitioner seeks. *See generally* ECF No. [12]. According to Respondents, Petitioner failed to provide sufficient evidence that there is no significant likelihood of removal in the reasonably foreseeable future, and that even if Petitioner provided some evidence, Respondents' rebuttal evidence establishes that Respondents have regularly removed noncitizens to Pakistan. *See generally id.*

On January 4, 2022, Magistrate Judge Otazo-Reyes issued her R&R, recommending that the Petition be granted in part and denied in part. *See* ECF No. [22]. The R&R states that Petitioner is not entitled to release from custody pending removal, but that Petitioner is entitled to a bond hearing. *See id.* at 6-8. On February 1, 2022, Petitioner filed his Objection, arguing that Magistrate Judge Otazo-Reyes erred in recommending that Petitioner not be released from custody pending removal. *See* ECF No. [25]. Petitioner submits that he established that there is no significant likelihood of removal given Respondents' inability to obtain the correct travel documents and that Respondents failed to present reliable rebuttal evidence regarding the rate of successful removals. *See id.* at 2-3. Respondents filed their Response to Petitioner's Objection, arguing that the delay in obtaining travel documents does not establish that Petitioner is unlikely to be removed in the reasonably foreseeable future and that their rebuttal evidence on the number of successful removals establishes that Petitioner will be removed in the reasonably foreseeable future. *See* ECF No. [28] at 9-15.

On February 1, 2022, Respondents also filed their own Objections to the R&R, arguing that Magistrate Judge Otazo-Reyes erred in recommending that Petitioner be given a bond hearing

because existing case law does not entitle Petitioner to a bond hearing. *See* ECF No. [26]. Petitioner filed his Response to Respondents' Objections, arguing in part that the Supreme Court has not issued a precedential ruling addressing whether individuals like Petitioner are entitled to a bond hearing and that he is entitled to a bond hearing on Due Process grounds. *See* ECF No. [27] at 5-6.

## II. LEGAL STANDARD

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the report and recommendation to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).

Case No. 21-cv-23752-BLOOM/Otazo-Reyes

## III. ANALYSIS

### a. Petitioner's Objection

Petitioner argues that the R&R erred in concluding that Petitioner is not entitled to release pending removal because: (1) Petitioner has established good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future; and (2) Respondents' rebuttal evidence that they have averaged 200 removals to Pakistan over the last few years is an "unweighable" statistic since it fails to establish the rate of removal. ECF No. [25] at 2-3. The Court addresses each objection in turn.

#### i. *Petitioner's Evidence*

Petitioner first argues that he presented sufficient evidence that his removal to Pakistan is not significantly likely to occur in the reasonably foreseeable future. *See* ECF No. [25] at 2. Petitioner submits that, at the time of his Objection, he has been detained for more than ten (10) months since his removal order became final and that Respondents have not secured valid travel documents for Petitioner. *See id.* Petitioner argues that any claim that the "U.S. government may be able to get a travel document for Mr. Shaikh at some nebulous point in the future" does not support the conclusion that Petitioner's removal will take place in the reasonably foreseeable future. *Id.* at 2-3.

Respondents argue that a mere delay in the issuance of travel documents, without more, does not satisfy Petitioner's burden of establishing that "a petitioner's removal will not occur in the reasonably foreseeable future." ECF No. [28] at 9. Respondents rely on several cases, such as *Linton v. Holder*, where courts determined that "a delay in issuance of travel documents does not, without more, establish that a petitioner's removal will not occur in the reasonably foreseeable future, even where the detention extends beyond the presumptive 180 day (6 month) presumptively

reasonable period." *Id.* at 9-10 (citing No. 10-20145, 2010 WL 4810842, at *4 (S.D. Fla. Oct. 4, 2010), *report and recommendation adopted*, No. 10-20145, 2010 WL 4810651 (S.D. Fla. Nov. 19, 2010)).

The Court agrees with Respondents. As correctly stated in the R&R, in *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001), the Supreme Court noted that, "[w]hen an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." The Supreme Court also acknowledged that, pursuant to 8 U.S.C. § 1231(a)(6), such aliens may be detained beyond the 90-day removal period. *Id.* The Court held that a six-month post-removal detention period, that includes the 90-day period, is presumptively reasonable, and that

> [a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. . . . This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In this case, the six-month post-removal detention period started on March 31, 2021, and lapsed on September 30, 2021. *See* ECF No. [22] at 5. Therefore, based on the standard set forth in *Zadvydas*, the R&R correctly analyzed whether Petitioner provided a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 6.

Petitioner's argument that he has been detained for more than ten (10) months since his removal order became final and that Respondents have not secured valid travel documents for him does not establish a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The Pakistan Consulate issued the first set of travel documents less

6

than five (5) months after Officer Fernandez submitted his request. *See id.* at 5. Therefore, the second, corrected set of travel documents will likely be issued within five (5) months after Officer Fernandez requested the second set of travel documents on December 15, 2021. *See id.* Petitioner fails to provide any reason why the Pakistan Consulate will deny Officer Fernandez's request for the second set of travel documents and indefinitely stall Petitioner's removal to Pakistan. By all indications, the Pakistan Consulate will issue travel documents in the reasonably foreseeable future. Further, it bears repeating that "a delay in issuance of travel documents does not, without more, establish that a petitioner's removal will not occur in the reasonably foreseeable future, even where the detention extends beyond the presumptive 180 day (6 month) presumptively reasonable period." *See Linton*, 2010 WL 4810842, at *4. As such, Petitioner's claims regarding the ten (10) month delay and Respondents' inability to secure travel documents thus far, while unfortunate, do not satisfy Petitioner's burden of establishing a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

*ii. Respondents' Rebuttal Evidence*

Because Petitioner fails to establish a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, Respondents need not respond with evidence sufficient to rebut Petitioner's claim, and the Court need not go further. *See Zadvydas*, 533 U.S. at 701 ("*once* the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must [then] respond with evidence sufficient to rebut that showing" (emphasis added)).

Nevertheless, to be thorough, the Court notes that to the extent Petitioner argues that Respondents fail to establish the rate of successful removals to Pakistan, the Court is not persuaded. The operative question under *Zadvydas* is whether there is no significant likelihood of

removal in the reasonably foreseeable future. *See* 533 U.S. at 701. Respondents' unrebutted claim that 200 individuals have been removed to Pakistan each year is sufficient to answer the operative inquiry as to whether Respondents are capable of removing noncitizens to Pakistan and whether Petitioner's removal will take place in the reasonably foreseeable future.

Further, the Court considers the factual circumstances from *Zadvydas* to be instructive on this matter. Zadvydas was not a citizen of any country because he was born in a displaced persons camp in Germany. *See id.* at 686. As such, Zadvydas could establish a good reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future. *See id.* at 702. In contrast, in this case, Respondents' undisputed claim that 200 individuals have been repatriated to Pakistan each year is sufficient rebuttal evidence that repatriation is certainly possible and Petitioner may be removed in the reasonably foreseeable future. Therefore, the Court overrules Petitioner's Objection and finds Magistrate Judge Otazo-Reyes' R&R to be correct on this matter.

### b. Respondents' Objections

Respondents argue that the R&R erred in concluding that Petitioner is entitled to a bond hearing. *See generally* ECF No. [26]. Magistrate Judge Otazo-Reyes exclusively relied on *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011), in recommending that Petitioner is entitled to a bond hearing, *see id.* at 14, and Respondents argue that several cases establish that *Diouf*'s holding is not instructive and that individuals detained under § 1231 are not entitled to a bond hearing. *See id.* at 17-19, 21-23 (citing *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2280 (2021); *Martinez v. Larose*, 968 F.3d 555, 557 (6th Cir. 2020), *Guzman Chavez v. Hott*, 940 F.3d 867, 875 (4th Cir. 2019), *rev'd sub nom. Guzman Chavez*, 141 S. Ct. at 2271)). Respondents also argue that the Supreme Court's upcoming decisions in *Johnson v. Arteaga-Martinez*, No. 19-896, 142 S. Ct. 920 (2021), and *Garland v. Aleman Gonzalez*, No. 20-322, 142 S. Ct. 919 (2021), will further clarify

that individuals detained under § 1231 are not entitled to a bond hearing, barring a complete reversal of the Supreme Court's decision in *Guzman Chavez*, 141 S. Ct. 2271. *See* ECF No. [26] at 18. In addition, Respondents submit that *Diouf*'s bond hearing requirement, which places the burden on the respondent to prove that a petitioner should not be released, conflicts with the *Zadvydas* standard, which places the burden of justifying release on the petitioner. *See id.* at 19-20. Given Magistrate Judge Otazo-Reyes' earlier recommendation based on the *Zadvydas* standard, her latter recommendation based on *Diouf* is incongruous and impermissibly shifts the burden to Respondents. *See id.* Lastly, Respondents argue that *Diouf* is distinguishable from the instant case because the petitioner in *Diouf* was held in custody for twenty-two (22) months, his removal was stayed for nearly four (4) years, and the Ninth Circuit was concerned that the "prolonged" detentions violated the petitioner's Due Process rights. *See id.* at 23. In contrast, in this case, Petitioner's removal order became final on March 31, 2021, and his Due Process rights have been protected through three separate custody reviews. *See id.* at 24.

Petitioner responds that *Diouf* is instructive, the Supreme Court has not issued a precedential ruling on whether 8 U.S.C. § 1231 provides for a bond hearing, and Respondents incorrectly expand the Supreme Court's holding in *Guzman Chavez*, 141 S. Ct. 2271, to suggest that § 1231 does not provide for a bond hearing. *See* ECF No. [27] at 4-5. Petitioner also submits that Respondents' cited case, *Martinez*, 968 F.3d at 557, is inapposite because the issue of bond hearings under § 1231 was not a central issue before the Sixth Circuit in that case. *See id.* at 4. Petitioner further argues that *Diouf* does not contradict the *Zadvydas* standard, and that Petitioner's prolonged detention violates Due Process. *See id.* at 2, 4. To the extent that Respondents rely on *Arteaga-Martinez*, 142 S. Ct. 920, and *Garland*, 142 S. Ct. 919, to argue that the forthcoming opinions will further clarify that individuals detained under § 1231 are not entitled to a bond

hearing, Petitioner argues that "we do not have a crystal ball" and must instead apply the law as it stands today. ECF No. [27] at 5.

The Court agrees with Respondents. Respondents correctly note that the Supreme Court stated unequivocally, after the Ninth Circuit's decision in *Diouf*, that noncitizens subject to removal under § 1231 are "not entitled to a bond hearing." *Guzman Chavez*, 141 S. Ct. at 2280. The Supreme Court stated, in relevant part:

> Federal immigration law contains various provisions authorizing the Government to detain aliens during the removal process. This case concerns two of them: 8 U.S.C. § 1226 and 8 U.S.C. § 1231. We are asked to decide which of those provisions applies to aliens who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders. If the answer is § 1226, which applies "pending a decision on whether the alien is to be removed from the United States," then the alien may receive a bond hearing before an immigration judge. *If the answer is § 1231, which applies after the alien is "ordered removed," then the alien is not entitled to a bond hearing. We conclude that § 1231, not § 1226, governs the detention of aliens subject to reinstated orders of removal, meaning those aliens are not entitled to a bond hearing while they pursue withholding of removal.*

*Id.* (emphasis added). Given the unambiguous language of the Supreme Court's most recent holding that noncitizens detained for removal under § 1231 are not entitled to a bond hearing, the Court determines that Petitioner is not entitled to a bond hearing. To the extent that Petitioner argues that *Guzman Chavez* is not precedential or that the Supreme Court did not decide whether noncitizens are entitled to a bond hearing pursuant to § 1231, the Court is not persuaded. A plain reading of the Supreme Court's holding forecloses such an argument and indicates that the Ninth Circuit's holding in *Diouf* regarding bond hearing requirements for noncitizens contravenes the Supreme Court's most recent decision.

Further, Respondents cite cases from other circuits in support of their argument that the R&R does not consider. *See* ECF No. [26] at 21-22; *see generally* ECF No. [22]. In *Martinez*, the Sixth Circuit stated that "aliens detained under § 1226(a) are entitled to bond hearings before an

Case No. 21-cv-23752-BLOOM/Otazo-Reyes

immigration judge (IJ) under the federal regulations, while aliens detained under § 1231(a) do not have a right to a bond hearing." 968 F.3d at 557. The Sixth Circuit addressed *Diouf* directly and said: "We are not imposing a general rule that aliens detained under § 1231(a) must receive a bond hearing after a specific lapse of time, as those circuits did." *Id.* at 565-66 (referring to the Ninth Circuit and Third Circuit). The Sixth Circuit further noted that "a bond requirement would be out of place in a post-*Jennings* world" and stated it was "reluctant to graft a bond-hearing requirement onto a statute absent language supporting such a requirement." *Id.* (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (holding that courts should not read a requirement onto a statute where there is no such requirement in the statutory text)). Petitioner argues that the issue before the Sixth Circuit in *Martinez*, 968 F.3d 555, was not whether the petitioner in that case had the right to a bond hearing because the petitioner had conceded that argument, *see* ECF No. [27] at 4. However, the Court is not persuaded given the Sixth Circuit's express holding on the matter, irrespective of the petitioner's concession.[2]

Next, Respondents argue that the Supreme Court's forthcoming decisions in *Arteaga-Martinez*, 142 S. Ct. 920, and *Garland*, 142 S. Ct. 919, will further clarify that a noncitizen does not have the right to a bond hearing pursuant to 8 U.S.C. § 1231. Petitioner responds that the Court cannot rely on how the Supreme Court may or may not decide those cases. However, the Court finds the discussion to be inapposite given existing Supreme Court precedent in *Guzman Chavez*, 141 S. Ct. at 2280. In other words, the Court need not rely on the Supreme Court's upcoming decisions in *Arteaga-Martinez* and *Aleman Gonzalez*. The Court can simply look to the Supreme

---

[2] The Court is not persuaded, however, by Respondents' partial reliance on the Eleventh Circuit's decision in *Sopo v. U.S. Attorney General* given that the case was vacated. *See* 825 F.3d 1199 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018). Further, the petitioner in that case was detained pursuant to § 1226(c), not § 1231, and the Eleventh Circuit in the vacated opinion did not expressly state that noncitizens detained pursuant to § 1231 were not entitled to a bond hearing. *See id.* at 1202.

11

Case No. 21-cv-23752-BLOOM/Otazo-Reyes

Court's holding in *Guzman Chavez*, which the Court considers sufficiently clear on the matter.[3] Given the weight of existing authority, the Court need not continue. The Court sustains Respondents' Objections and concludes that the R&R erred on this matter only.

## IV.   CONCLUSION

In sum, upon a comprehensive review, the Court finds Magistrate Judge Otazo-Reyes' R&R to be well reasoned and correct on all matters other than Petitioner's request for a bond hearing.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The R&R, **ECF No. [22]**, is **ADOPTED IN PART**.
2. The Petition, **ECF No. [1]**, is **DENIED**.
3. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.
4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 21, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[3] Further, the facts of *Diouf* are distinguishable given that the petitioner's removal was delayed several years in that case, which raised a Due Process concern, as opposed to the relatively shorter delay of approximately one year in this case. *See* 634 F.3d at 1088.